UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**STEPHANIE BERNSTEIN-PRATT, ET AL.**          **CIVIL ACTION**

**VERSUS**          **NUMBER: 23-2923**

**DOVER BAY SPECIALTY INSURANCE COMPANY**          **SECTION: "J"(5)**

**ORDER AND REASONS**

Before the Court is the Motion for Leave to File Defendant's Amended Answer, Defenses, and Demand for Jury Trial filed by Defendant, Dover Bay Specialty Insurance Company. (Rec. doc. 25). Plaintiffs filed an opposition memorandum (rec. doc. 26), and Dover Bay filed a reply. (Rec. doc. 27). On July 24, 2025, the Court held a hearing on the record and issued a verbal order denying the motion without prejudice and promising that written reasons would follow. (Rec. doc. 30). These are those reasons.

**I.**      **PROCEDURAL BACKGROUND**

This is a Hurricane Ida case that, from its filing on July 30, 2023 until its certification on October 17, 2024, was subject of this Court's Hurricane Ida Case Management Order ("CMO") and Streamlined Settlement Program. The case arises from claims made by Plaintiffs with Dover Bay as a result of damages to their home from the hurricane.

Sometime in September 2021, Plaintiffs initiated a claim with Dover Bay, which sent an adjuster on or about September 28, 2021 to visit the Plaintiffs' property at 3721-23 North Rampart Street in New Orleans.[1] There is no dispute that adjustment of Plaintiffs' claims

---

[1] The precise date of the first claim is not clear in the record, but the Court is aware of this general timeline through its previous attempts to resolve this matter through a Court-ordered settlement conference on October 17, 2024.

continued for roughly the next two years, including payments made by Dover Bay under a homeowner's insurance policy, number XLB388102. (Rec. docs. 1, 9).

Plaintiffs and Dover Bay attended two pre-suit mediations[2] and, when those bore no fruit, this lawsuit was filed on July 30, 2023.

While subject to the Hurricane Ida CMO, the parties attended yet another mediation and, when that failed, a settlement conference with the undersigned. (Rec. doc. 16). When the case didn't settle at that conference, the Court certified the case as having completed the requirements of the CMO and returned it to the regular docket for the setting of a Scheduling Conference. (*Id.*).

That was nine months ago.

Notably for present purposes, since the initial filing of the claim in late 2021 through the filing of this lawsuit <u>and</u> continuing from that filing until June 17, 2025, Dover Bay repeatedly and expressly acknowledged in writing and by its conduct that there was a valid and binding policy of insurance in place to cover Plaintiff's Hurricane Ida claim. For almost four years, through three mediations and a settlement conference here, Dover Bay has never suggested that its policy with Plaintiffs lapsed, was cancelled, or was otherwise not in effect.

Yet with scant (if any) evidence, that's what it now asks the Court to believe. Its Motion for Leave seeks to reverse positions in order to avoid coverage by suddenly claiming that the subject policy was cancelled due to non-payment some three months <u>after</u> Hurricane Ida struck. (Rec. doc. 25). Essentially, after four years, the Motion seeks to substitute the answer "No" for the countless times it answered "Yes" to the question whether a valid policy

---

[2] Again, the particulars of the two early mediations are not to be found in the record, but the Court confirmed with counsel at the hearing that they did, in fact, take place. (Rec. doc. 31 at 12-13).

2

was in effect.[3] For the reasons explained below, the Court cannot allow the amendment Dover Bay proposes.

## II. LAW AND ANALYSIS

The District Judge issued a Scheduling Order in this case on March 26, 2025, setting a deadline to amend pleadings of April 23, 2025. (Rec. doc. 20). The present motion was filed June 17, 2025, well after that deadline had expired.

When the court has entered a scheduling order setting a deadline for the amendment of pleadings, once that deadline has passed, the schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). This Court recently explained what "good cause" means in this context:

> The four factors relevant to determining the existence of good cause in the context of post-deadline amendment are: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (quoting *S & W Enters., L.L.C. v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)).

*Stanton Square, L.L.C. v. City of New Orleans*, No. CV 23-5733, 2025 WL 1432254, at *3 (E.D. La. May 19, 2025) (North, M.J.).

If Rule 16(b) good cause is established, the more liberal Rule 15(a) standard in favor of permitting amendment of pleadings comes into play. *Id.* Under Rule 15(a), while leave is

---

[3] For instance, in paragraphs 8, 13 and 14 of its Answer, Dover Bay's proposed amendment seeks to make this change:
*From*
"Regarding Paragraph 8 of Plaintiffs' Complaint, Dover Bay <u>admits</u> that at all material times thereafter, Dover Bay policy number XLB388102 (<u>the "Policy") was in force and effect</u>."
*To*
"Regarding Paragraph 8 of Plaintiffs' Complaint, Dover Bay <u>denies</u> that Dover Bay policy number XLB388102 (<u>the "Policy") was in force and effect</u> at the time of the alleged loss."

3

not automatic, "[t]he court should freely give leave when justice so requires." *Id.* (citing *Avatar Expl., Inc. v. Chevron USA, Inc.*, 933 F.2d 314, 320 (5th Cir. 1991)). Relevant factors to consider under Rule 15(a) include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.*

The overarching issue before the Court on this Motion, then, is whether Dover Bay can demonstrate good cause to amend its answer to disclaim coverage after spending the past four years doing just the opposite. For the reasons below, the Court finds it cannot.

Before moving to an examination of the Rule 16 factors quoted above, though, it is worth mentioning this – no one factor, no matter how much it may favor or disfavor amendment, can overwhelm the others. *Off. Stanford Invs. Comm. v. Am. Lebanese Syrian Associated Charities, Inc.*, No. 3:11-CV-0303-N, 2016 WL 8216510, at *1 (N.D. Tex. Jan. 7, 2016) ("No factor is dispositive, and the Court is not required to give specific weight to one factor compared to another."). On this, the parties agree.

In its original motion, Dover Bay cited two cases for the proposition that a "crucial" or "critical" amendment should be allowed even when the other factors weigh against amendment. (Rec. doc. 25) (citing *Giles v. ACE Am. Ins. Co.*, No. 18-6090, 2019 WL 1936680, at *1 (E.D. La. May 1, 2019) and *Murray v. Neff Rental, Inc.*, No. 08–0471, 2009 WL 3109880, at *2, 5 (W.D. La. Sept. 28, 2009)). In response, Plaintiffs correctly pointed out that

> the Fifth Circuit has repeatedly confirmed that the importance of the evidence or the amendment does not override the enforcement of the scheduling order. *Batiste v. Lewis*, 976 F.3d 493, 501 (5th Cir. 2020); *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990). If anything, the importance of the issue— the existence of the policy sued upon—underscores Dover Bay's lack of diligence in this case and further supports the lack of good cause here.

(Rec. doc. 26 at 7). At least insofar as this point is concerned, Dover Bay, in its reply, agreed, writing:

> Plaintiffs cite *Batiste v. Lewis* and *Geiserman v. MacDonald* arguing that the importance of the amendment cannot override the enforcement of the scheduling order. Dover Bay agrees with this statement, but in this case, unlike in *Batiste* and *Geiserman*, <u>the other three factors weigh in favor of finding good cause</u> – namely, Dover Bay's explanation for the failure to timely move to amend, the potential prejudice to Plaintiffs in allowing the amendment, and the availability of a continuance.

(Rec. doc. 27 at 2) (emphasis added).

No one in the case disputes the potential importance of the proposed amendment. The core question here, then, is whether the Court can possibly agree with Dover Bay that factors (1) and (3) (explanation for failure to timely amend and potential prejudice to Plaintiffs) actually weigh in favor of the amendment.

They very clearly do not.

A. *Explanation for the Failure to Timely Move to Amend*

Given the passage of almost four years from Dover Bay's "acceptance" of coverage and its now proposed defense that there was no policy in place at the relevant time, the question <u>why</u> it took so long to raise this defense is of obvious importance and interest to the Court.

Before getting to the "why," though, we should address the "what," meaning, what does "delay" actually mean in this unusual, if not unique, situation.

1. <u>Defining "Timeliness" in this Context</u>

Usually in these cases – where a litigant is seeking to file an amended pleading after the deadline for doing so – the issue is the timing for that request vis-à-vis the deadline in the scheduling order for doing so. Not so in this case.

The Court simply cannot ignore the undisputed facts that, for almost two years before this lawsuit was even filed, Dover Bay interacted with and paid Plaintiffs insurance proceeds under a specifically designated policy of insurance. Then we have what's been happening since this lawsuit was filed, beginning with Dover Bay's Answer.

First, despite lodging <u>32 separate affirmative defenses</u>, Dover Bay failed to plead the affirmative defense(s) of no coverage, cancellation, failure to pay premiums, or any other affirmative defense similar to what it seeks to add here. As Dover Bay seeks to avoid liability on the basis of the implied cancellation of Plaintiffs' policy, this Court views that particular defense as one that should have been pleaded as an affirmative one. Given all the facts, it probably doesn't matter[4] whether the Court is correct on that account, because Dover Bay expressly conceded coverage in multiple instances in its Answer. That is what matters in this analysis.

At least three times in its Answer,[5] Dover Bay included this language: "Dover Bay admits that at all material times thereafter, Dover Bay policy number XLB388102 (the "Policy") was in force and effect." (Rec. doc. 9 at ¶¶ 8, 13, 14). Then, Dover Bay, in compliance with this Court's Hurricane Ida CMO, produced "a complete and unaltered" copy of "the Policy in effect at the time of" Hurricane Ida. According to Defense counsel's representation at the hearing, the declaration page on the policy produced according to the standing order reflected a coverage period of August 13, 2021 through August 13, 2022. (Rec. doc. 31 at 7).

---

[4] This question would bear more directly on the question of waiver or estoppel, which the Court views as a Rule 15 question concerning futility. Because we don't reach Rule15 in this analysis, this Order will avoid a more detailed analysis of the legal effect of these pleading anomalies.

[5] This, after almost two years of active adjustment and negotiation, including Dover Bay actually making payments to Plaintiffs.

Thereafter, Dover Bay participated in a CMO-mandated mediation and followed that exercise up with a <u>voluntary</u>[6] settlement conference with the undersigned. When that conference was unsuccessful, the case was certified to return to the docket for entry of a scheduling order. It is that order that set the deadline for amendments that Dover Bay now seeks to modify via the present motion.

So, in sum, given the amount of activity and work that has gone into this case almost since Hurricane Ida struck Louisiana, the Court views this delay, not as one of a couple of months, but as one of four years at most and two years at the least. We now turn to Dover Bay's explanation for this delay.

2. <u>How Did This Happen?</u>

The explanation Dover Bay included in its Motion papers (such as it is) was unsatisfying to say the least. After more fully exploring the question at the hearing, the Court can now only conclude that there is no explanation at all.

Dover Bay was (perhaps intentionally) obtuse in explaining in its briefs why or how this all happened. First, it simply said that "after an <u>internal investigation</u>, Dover Bay realized that because Plaintiffs failed to pay their premiums, the policy was rendered invalid." (Rec. doc. 25 at 1). In all of the five pages Dover Bay devoted to briefing this "crucial" amendment, that's the best explanation it provided to the Court. And as it turns out after more fully discussing the matter with Dover Bay's counsel at the hearing, this explanation is exaggerated in part and simply not true in part (more on that below).

---

[6] The Court's CMO provides that the parties, after a failed mediation, may <u>mutually</u> agree to a settlement conference with the assigned Magistrate Judge before the case is returned to the docket.

7

After being pressed for details by Plaintiffs in their Response Memorandum, Dover Bay added some additional explanation, but no additional evidence, to support its argument.

In their opposition memorandum, <u>Plaintiffs</u> mentioned a "policy cancellation notice" that was part of the claims file produced as part of Dover Bay's mandatory disclosures some 18 months ago. (Rec. doc. 26-2). Notably, this notice was sent to Plaintiffs' mortgage company, Wells Fargo, and to Plaintiffs themselves. *Id.* The notice, which appears to the Court to be nothing more than a standard notice that a premium payment is due, is dated October 27, 2021 (two months post-Ida) and informs Wells Fargo and Plaintiffs that the policy would be cancelled if a premium payment was not received by November 10, 2021. *Id.*

In its reply, Dover Bay, for the first time, seized on this notice to bolster its argument that the Plaintiffs' policy was cancelled, despite there being no evidence of any sort in the record to suggest that the policy was ever actually cancelled – no note in the claims file, no document from underwriting, no notice by mail or email to either Wells Fargo or Plaintiffs. And to be clear, when pressed on the question at the hearing, Dover Bay's counsel conceded the lack of record evidence of actual cancellation. (Rec. doc. 31 at 4-5).

What Dover Bay's counsel did suggest in the reply brief was something entirely new:

> [A]dditional recent discovery has revealed that on June 8, 2022, Dover Bay rewrote a policy (Policy No. XLB636601) for the property at issue. If Plaintiffs had been paying their premiums for Policy No. XLB388102, the policy referenced in the Complaint, their property would have been covered from August 13, 2021 to August 13, 2022 – and there would have been no need to rewrite the policy on June 8, 2022. This evidence is pivotal to this case.

(Rec. doc. 27 at 1). There is a lot to unpack in this statement.

8

First, "recent discovery" did not reveal this "rewriting" of a new policy. This information was discovered as a result of Defense counsel's questioning of their own client regarding an anomaly they identified when they finally requested a certified copy of the policy at issue in this case (more on this below).

Second, counsel suggests that had <u>Plaintiffs</u> paid their premiums the policy would have been in effect from August 13, 2021 <u>through August 13, 2022</u>. Two problems here. Dover Bay acknowledged at the hearing that Wells Fargo was charged with paying the premiums, not Plaintiffs themselves. (Rec. doc. 31 at 27). Second, and more important, the declarations page produced by Dover Bay to Plaintiffs as part of its mandatory disclosures in the CMO stated that the policy was, in fact, in effect from August 2021 through August 2022. (*Id.* at 9). Moreover, the declarations page on the <u>certified</u> copy of the policy produced by Dover Bay in discovery <u>also</u> listed an effective date of the policy through August 2022. (*Id.*). According to Dover Bay's counsel, it was only the <u>certification</u> page that listed the effective dates as August 13, 2021 through August 13, 2021, the aforementioned anomaly that set this entire fiasco in motion. (*Id.*).

Finally, Dover Bay claims this new policy and the alleged application for it is "pivotal to the case," yet nothing associated with a second policy, including an application for such a policy has been included in the record by Dover Bay.

At the hearing, Dover Bay's counsel handed the Court (and Plaintiffs' counsel) a document of unknown provenance that he claimed was Plaintiff's own application for a new policy of insurance. (*Id.* at 6). He claimed that, because Plaintiffs applied for a new policy before the expiration of the old one, that must mean they knew the original policy had lapsed – why else apply for a new one was the argument. Again, there are multiple problems here.

9

First and foremost, that document, which counsel had received only two days before the hearing, has never been made part of the record. We talked about it at the hearing, but it is not in the record – despite counsel stating that this document was "the only evidence" that "no premium payment was received" by Dover Bay. (*Id.* at 10-11). This statement of course begs the question – if this document is the "only evidence" that Plaintiffs' policy was cancelled for non-payment of the premium, and it was only discovered by counsel two days before the hearing, upon what evidence was Dover Bay basing its Motion for Leave, when that motion was filed more than a month before the document was discovered?

Then there is the document itself. It is not signed by anyone, including the plaintiffs, and it lists as an apparent applicant an agent/broker with an email address that ends in "@statefarm.com."[7] Even if this document were in the record, it is not at all clear what the document is or whether it would ever be admissible.

In the final analysis, whatever this ostensibly "pivotal" document is, it came from Dover Bay's underwriting department, where it has presumably resided since its apparent creation in 2022. Yet no one associated with this claim – not Dover Bay's claims department or its lawyers in this case, were informed of its existence until a few days ago. And therein lies the key question for the Court – why did this not come to light for three years while this claim and litigation was active? In other words, what is Dover Bay's explanation for the delay in seeking leave to amend its Answer?

There is no explanation.

> THE COURT: How does this happen?
>
> MR. WANEK: I don't understand because claims didn't know. We contacted claims and then that triggered an investigation.

---

[7] The Court is advised that Dover Bay is owned by or is otherwise affiliated with State Farm.

10

> THE COURT: How could their claims department not know this? How could this persist for four years; two law firms, three mediations and a settlement conference with the magistrate judge?
>
> MR. WANEK: Judge, I don't –
>
> THE COURT: Don't have an explanation?
>
> MR. WANEK: I really don't. Ms. Jaynes found it.
>
> THE COURT: Under Rule 16, that's a problem. The very first thing that we've got to talk about is an explanation for why this happened and there is none. There is no explanation.
>
> MR. WANEK: Judge, as plaintiffs' counsel mentioned, we have lots of cases where they have notice of cancellation in the files. In this case, claims was, apparently, just never notified that the premium was not received and they assumed that there was a policy in effect.
>
> THE COURT: They are the same company?
>
> MR. WANEK: I'm aware but, apparently, in this case, underwriting and claims didn't communicate. So we, as counsel, were left with this –
>
> THE COURT: That's the explanation. The two departments within the same entity didn't communicate and so for four years these folks have been working with this company to try to get their claim adjusted. For two years these lawyers have been helping them in litigation, attending mediations and conferences. And the explanation is Dover Bay couldn't figure out how to – the left hand and the right hand couldn't figure out – know what each other were doing.
>
> MR. WANEK: I can't say anymore than that. . . .

(*Id.* at 12-13).[8]

---

[8] This colloquy also establishes that Dover Bay's representation in its Motion that "after an internal investigation, Dover Bay realized that because Plaintiffs failed to pay their premiums, their policy was rendered invalid" is not true. This entire episode is the direct result of counsel's curiosity, investigation, and argument,

11

Because Dover Bay has no explanation for the untimeliness of the proposed amendment, this factor weighs against granting the motion.

B. *Importance of the Amendment*

Dover Bay argues, and the Court agrees, that the proposed amendment is important to Dover Bay, as it would potentially allow it to avoid any liability or additional obligation to Plaintiffs. This factor weighs in favor of the proposed amendment.

C. *Potential Prejudice in Allowing the Amendment*

Recall that Plaintiffs cite two Fifth Circuit cases, *Batiste* and *Geiserman*, for the proposition that the importance of the amendment alone cannot override enforcement of the Scheduling Order. (Rec doc. 26 at 7-8). And that Dover Bay responded by agreeing with that proposition but arguing this case is different because "the other three factors weigh in favor of finding good cause." (Rec. doc. 27 at 2). The Court has already determined that Dover Bay's explanation for its delay is no explanation at all and that factor favors Plaintiffs' position.

Turning then to Dover Bay's argument as to potential prejudice to the Plaintiffs in allowing the proposed amendment, it fares no better.

In its original moving papers, the sum total of Dover Bay's argument as to why Plaintiffs would not be prejudiced by this proposed amendment is that "trial is seven months away, [] discovery is ongoing [and] no depositions have been taken yet, and Plaintiffs will have ample time to address this allegation by Dover Bay." (Rec. doc. 25-1 at 5). In its Reply

---

not some internal investigation that revealed <u>actual</u> non-payment of premiums or <u>actual cancellation</u> of the policy at issue here.

12

Memorandum, Dover Bay repeats that argument but adds nothing new. (Rec. doc. 27 at 3). This oversimplified, conclusory argument entirely misses the real point.

The prejudice to Plaintiffs here doesn't arise from an amendment that comes two months after the deadline in the Scheduling Order – it arises from a 180-degree change in coverage positions that comes four years after Hurricane Ida hit, three years after Dover Bay received a Letter of Representation from Plaintiffs' counsel,[9] and two years after this lawsuit was filed. It comes after three mediations and a court-ordered settlement conference. Simply, this is not about how much time remains, it's about how much time has passed.

Counsel for the parties agreed at the hearing that it was Plaintiffs' mortgage company that was responsible for paying their insurance premiums out of funds escrowed for that purpose. If the premium was not paid (not altogether clear) and if the Court were to allow this amendment, Plaintiffs' counsel correctly advised at the hearing that he would likely have to add Wells Fargo as a defendant (in this case or a new one). Similarly, the role in this saga of Plaintiffs' insurance agent is unclear (although the agent's name does feature at the top of the "pivotal" 2022 application that is not in evidence). This raises an entirely different problem for Plaintiffs if there is a claim there – peremption under Louisiana law.[10] Assuming a claim arises out of the circumstances presented by the present motion, it may well be perempted, the fault for which would arguably lie with Dover Bay, based its the years-long failure to discover this "defense."

---

[9] Dover Bay's counsel informed the Court it received Plaintiffs' counsel Letter of Representation on June 9, 2022. (Rec. doc. 31 at 12).
[10] *See* La. Rev. Stat. Ann. § 9:5606 (providing for a three-year peremptive period from the date of the alleged act, omission, or neglect against Louisiana insurance agents.).

The Court must also consider the enormous waste of time and resources, including financial resources of Plaintiffs and their counsel, occasioned by four years of Dover Bay's negligent failure to recognize what it now says was Plaintiffs' non-payment of premiums.

Considering all this, the Court easily finds that that this factor weighs against the proposed amendment.

*D. Availability of a Continuance*

The Court finds this factor to be inapplicable to these circumstances, so it is neutral at best.

### III. CONCLUSION

The Court recalls here Dover Bay's statement in its Reply that this case is different than the two Fifth Circuit cases cited by Plaintiffs because factors (1) and (3) – explanation for the delay in seeking the amendment and potential prejudice to the Plaintiffs – weigh in favor of the amendment. Nothing could be further from the truth. Both of those factors weigh against the amendment. As the only factor weighing in favor of it is the importance of the amendment, denial of the Motion for Leave is appropriate and necessary.

**IT IS ORDERED** that Defendant's Motion for Leave to Amend (rec. doc. 25) is **DENIED WITHOUT PREJUDICE**. As stated at the hearing, however, the Court notes that it will allow Defendant to propound limited discovery on Plaintiffs related to the issues and documents discussed at the oral hearing.

New Orleans, Louisiana, this 30th day of July, 2025.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

14